UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN ABBEY, ET AL., :
    Plaintiffs, : 3:03CV172 (DJS)
-v- :
     :
JOHN G. ROWLAND, THOMAS A. KIRK, JR. :
and STATE OF CONNECTICUT, :
    Defendants. :

## MEMORANDUM OF DECISION

Plaintiffs are all former state employees whose jobs were eliminated during budget cuts that took effect in February 2003. Defendants were, at the time of the budget cuts, the governor of the State of Connecticut and the commissioner of a state agency, respectively. The defendants have moved to dismiss the action for lack of subject matter jurisdiction and also for failure to state a claim. The motion to dismiss **[doc. #54]** is **GRANTED**.

## STATEMENT OF FACTS

The facts and inferences herein are drawn generally from plaintiffs' pleadings, which are accepted as true for purposes of deciding the pending motion. John G. Rowland was, in the fall of 2002 and spring of 2003, the Governor of the State of Connecticut ("the Governor" or "Governor Rowland"). Thomas A. Kirk, Jr was, during the same time period, the Commissioner of Mental Health and Addiction Services of the State of Connecticut ("the Commissioner" or "Commissioner Kirk"). At the time in question, the State of Connecticut faced a budget deficit and Governor Rowland, exercising his authority pursuant to Conn.Gen.Stat §4-85(b), acted to reduce the appropriation for the Connecticut Department of Mental Health and Addiction Services ("Department of Mental Health") by eliminating the

-1-

job series or classification including Psychiatric Social Workers ("PSW") or Psychiatric Social Worker Assistants. There were approximately 55 PSWs at the time of these events. All of the plaintiffs were members of the eliminated class of employees.[1]

The constitutional and statutory scheme for budget administration in Connecticut is a mix of legislative and executive responsibilities, described in Conn.Gen.Stat. §4-69 through §4-107a. The governor is charged by law with presenting a budget plan to the state legislature every two years. Conn.Gen.Stat. §4-72–§4-73. The governor is further charged with reporting to the state's General Assembly, on or before the thirtieth day of October, January and April, whether a budget deficit is projected for the fiscal year then in progress. Conn.Gen.Stat. §4-82a. Allocations of budget funds to state agencies are made on a quarterly basis. Conn.Gen.Stat. §4-85(a). Each budgeted agency must submit, to the governor, a requisition for a quarterly allotment, which the governor must approve, subject to one very broad exception. Conn.Gen.Stat. §4-85(a).

The governor may, if he determines that a change in circumstances since the adoption of the budget warrants it, increase or reduce the allotment request or the allotment in force to the extent he "deems necessary." Conn.Gen.Stat. §4-85(b)(1). The governor must file a report with the joint standing committee of the General Assembly charged with responsibility for budget and appropriations, but he does not need legislative permission to make the discretionary change in the budget. Id. The governor is also mandated, by law, to devise a plan to prevent a budget deficit if a deficit of more than one percent of the state's general fund of appropriations is projected. Conn.Gen.Stat. §4-85(b)(2). The governor's responsibility to

---

1. At present, only two of the original plaintiffs remain as parties to the action. All other plaintiffs have settled their claims.

alleviate the projected deficit is not discretionary, although the proposed deficit reduction may not reduce the overall budget by more than three percent, or the budget for any single appropriation by more than five percent, without legislative action. Id.

Although plaintiffs studiously avoid any indication to the court of whether the governor was acting pursuant to §4-85(a) or §4-85(b), the court will take judicial notice, as a generally known fact, that the State of Connecticut in the autumn of 2002 was facing a projected budget deficit of more than one percent and that, as a result, Governor Rowland was acting pursuant to the mandate of §4-85(b).[2]

As one part of the deficit reduction plan proposed by Governor Rowland in 2002, the PSWs were laid-off on Feburary 20, 2003. The duties previously performed by the PSWs were shifted to other positions within the Department of Mental Health, including positions created subsequent to the elimination of the PSW class of employees. The plaintiffs had "bump down" rights within the PSW class, meaning that they could not be selected for layoffs ahead of other PSWs with less seniority. The elimination of the entire PSW class effectively eliminated these "bump rights" because no jobs existed for the plaintiffs to "bump" into.

Plaintiffs allege in their complaint, and the court accepts as true, that the workers hired in other classifications were younger and lower salaried than the PSWs. Further, plaintiffs allege, and the court accepts, that the purpose of the PSW elimination was to eviscerate the "bump rights" of the plaintiffs and ensure that their higher salaries would be eliminated.

---

2. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Kaggen v. IRS, 71 F.3d 1018, 1019 (2d Cir. 1995).

**STANDARD OF REVIEW**

When considering a Rule 12(b)(1) motion to dismiss, the court accepts as true all factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). Jurisdiction must be affirmatively proved. Id. The court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question. Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-1131 (2d Cir. 1976).

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Under Rule 12(b)(6), dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**DISCUSSION**

The defendants to this action challenge the court's subject matter jurisdiction, claiming

sovereign immunity, legislative immunity and qualified immunity. Defendants further move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can granted. Plaintiffs admit that the State of Connecticut is an improper defendant under the Eleventh Amendment to the United States Constitution and do not object to dismissal. The State of Connecticut is therefore dismissed as a defendant for lack of subject matter jurisdiction.

The plaintiffs seek compensatory and punitive damages against both Governor Rowland and Commissioner Kirk in their individual capacities, as well as prospective injunctive relief against the Governor and the Commissioner in their official capacities. Defendants move to dismiss all claims against them in their individual capacities as barred by the doctrine of absolute legislative immunity. They also contend that the claim for prospective injunctive relief exceeds the scope of claims that may be brought pursuant to Ex Parte Young, 209 U.S. 123 (1908).

### A.  The Defendants' Actions are Entitled to Legislative Immunity from Suit

"It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 46 (1998). Immunity extends to state executive branch officials when they perform a legislative function. Bogan, 523 U.S. at 55. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. at 54. Any activity that is in the sphere of legitimate legislative activity is a legislative act. Id. There is no fixed class of activities that are legislative functions, rather the court considers the nature of the function and the effect of liability on the proper exercise of the function. Forrester v.

White, 484 U.S. 219, 224 (1988). An executive function that is an integral step in the legislative process will usually be considered a legislative act. Bogan, 523 U.S. at 55. See also, Smiley v. Holm, 285 U.S. 355, 372-373 (1932)(holding that the state legislature cannot enact a law without the participation of the state governor, where the state constitution gives the governor a role in the enactment process).

Most courts have held that "a discretionary, policymaking decision implicating the budgetary priorities" of a state or municipality is a legislative act entitled to legislative immunity. Bogan, 523 U.S. at 55. Immunity extends to budget decisions that eliminate jobs, even for allegedly discriminatory reasons. See, Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 211 (2d Cir. 2003)(stating that the elimination of a class of jobs "for budgetary or policy reasons" is not denied status as a legislative act solely because it relates to employment); Gordon v. Katz, 934 F.Supp.79 (S.D.N.Y. 1995)(holding that a judge was legislatively immune for her actions in proposing a budget to local legislators that, when adopted, eliminated the job held by the plaintiff); Rini v. Zwirn, 886 F.Supp. 270 (E.D.N.Y. 1995)(holding that all members of a town council, including the town supervisor, were entitled to legislative immunity for their actions in approving a local budget that eliminated jobs held by members of the opposite political party). Employment decisions made by legislative action are not administrative. Such decisions "are not 'employment decisions' at all but instead legislative, public policy choices that necessarily impact on the employment policies of the governing body. The political decision making inevitably involved in exercising budgetary restraint strikes at the heart of the legislative process and is protected legislative conduct." Rateree v. Rockett, 852 F.2d 946, 950-951 (7th Cir. 1988).

The decision to eliminate a class of employees or otherwise to terminate the existence of an employment position, when made as part of a state or municipal budgetary process, is generally considered "the kind of broad, prospective policymaking that is characteristic of legislative action." Harhay, 3232 F.3d at 211. The actions of Governor Rowland and Commissioner Kirk fall squarely within the realm of immune legislative activity. The governor of Connecticut is required, by law, to propose a budget for review by the state legislature. Further, the governor is mandated, by law, to propose remedial budgetary measures whenever the state is faced with a budget deficit of a prescribed size. Connecticut faced an significant budget deficit in 2002 and 2003 and Governor Rowland formulated his remedial budget program as required by law. The Governor's budget proposal was the sine qua non of the budget process–a first-step that was legally necessary to reducing the budget deficit. Nothing could be more integral to the legislative process than the statutorily mandated first step. The Governor's choices of exactly how to cut the budget may have been discretionary, but they were policy choices of broad import. The fact that any budget reduction would necessarily have an adverse impact on some employment does not change the budgetary decision from a legislative to an administrative function. See, Rateree v. Rockett, 630 F.Supp. 763, 771 (N.D.Ill. 1986)("[w]hen budgets are cut materially in an industry as labor intensive as that of…government, some people will almost surely lose their jobs").

It is not clear from the pleadings what, exactly, Commissioner Kirk did that would lead to liability in this action. The court assumes, for purposes of this motion, that the Commissioner either recommended this specific budget reduction or acquiesced to the Governor's plan and made an allocation request that included the elimination of the PSWs.

Regardless, the Commissioner is also entitled to legislative immunity. The Supreme Court has held that the doctrine of legislative immunity can apply to legislative and executive aides, as well as other members of the executive branch, if warranted by application of the functional immunity analysis. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 809-811 (1982). The functional test, applied here, leads to a finding that Commissioner Kirk's actions are entitled to legislative immunity.

Commissioner Kirk, if his liability is derived from his actions in requesting a budget allocation and advising the Governor on the formation of an appropriate deficit reduction plan, was engaged in a precursor process integral to the legislative action of the Governor. The budgetary process is definitively legislative, and any participant in that process must have the freedom to make decisions and recommendations in accord with their legal obligations without fear of suit. Any other conclusion could expose government officials to endless litigation arising out of unavoidable and indispensable legislative acts. As noted, it is virtually impossible to formulate a budget, or to seek input on a budget proposal, without contemplating or proposing some act that will reduce pay or eliminate jobs or restructure employment contracts, etc. Adopting plaintiff's position that Commissioner Kirk was acting administratively will, no less than a finding that Governor Rowland was acting administratively, convert "every budget decision into an administrative one. This backdoor approach [to attacking legislative decision] is unacceptable." <u>Rateree</u>, 852 F.2d at 950.

Both Governor Rowland and Commissioner Kirk were engaged in budgetary decisions, consultations and practices that are fundamentally legislative in nature and therefore both men are entitled to legislative immunity from suit. All claims against the

defendants in their individual capacities are dismissed.

### B. The Claim for Injunctive Relief

Governor Rowland and Commissioner Kirk have moved the court to dismiss the claim for prospective injunctive relief on the grounds that it does not fall within the scope of the Ex Parte Young, 209 U.S. 123 (1908), exception to sovereign immunity. Ex Parte Young "allows a suit for injunctive or declaratory relief challenging the constitutionality of a state official's actions in enforcing state law." Western Mohegan Tribe and Nation v. Orange County, — F.3d —, 2004 WL 2965960, *2 (2d Cir. Dec. 23, 2004). According to the defendants, the Supreme Court's decision in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), creates a two-part test that courts should apply to determine whether a claim falls within the Ex Parte Young exception. Although this court rejects the defendants' interpretation of Coeur d'Alene, the claim for prospective injunctive relief does not fit within the scope Ex Parte Young.[3]

The Supreme Court has declared that Coeur d'Alene requires only a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc v. Public Service Com'n of Maryland, 535 U.S. 635, 645 (2002); see also, CSX Transportation, Inc. v. New York State Office of Real Property Services, 306 F.3d 87, 98 (2d Cir. 2002). The purpose of Ex Parte Young is to ensure that sovereign immunity is meaningful while also recognizing the need to

---

3. The meaning of Coeur d'Alene is a somewhat disputed. The specific language from Coeur d'Alene cited by the defendants comes from portion of the majority opinion that was not, in fact, joined by a majority of the court. 521 U.S. at 278-280. The Second Circuit has not chosen an approach to its analysis of claims raised under Coeur d'Alene but has instead adopted the Verizon test for determining whether Ex Parte Young applies in a given case.

prevent violations of federal law. CSX, 306 F.3d at 98. Courts have sometimes dismissed claims pled under Ex Parte Young when "the relief requested would be so much a divestiture of the state's sovereignty as to render the suit as one against the state itself." Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041 (9th Cir. 2000) *cert. denied* 532 U.S. 958 (2001). A proper Ex Parte Young claim is one that seeks to bar a state official from undertaking or continuing an unconstitutional action, rather than one that attempts to wrest control of state activities, which must necessarily be performed by state officials, from the state itself.

    The claim for prospective injunctive relief in this action is clearly a suit seeking to divest the state of its sovereignty rather than to prospectively limit the unconstitutional actions of state officials and therefore is barred by the Eleventh Amendment. The injunctive relief, if granted, would not prevent any state official from enforcing any state law that runs afoul of the constitution. Rather, the injunction would order the state to restore a budget allocation that state officials, exercising their lawful powers and the state's sovereign control of its own budget, have decided to reduce. The effect of any relief would be entirely retrospective, as it would invalidate a state action that took place nearly two years ago. Further, the relief would not be merely prohibitive but would require new spending by the state to re-hire the plaintiffs and restore the jobs that the state has already eliminated. The state would, effectively, be divested of its sovereign authority over its resources. Allowing this action to proceed could result in a ruling that the state may not reorganize its own departments or otherwise eliminate jobs as part of a legal budgeting process. Ultimately, this is not an action to prevent ongoing violations of the Constitution or federal law, but rather an attempt to use the courts to overturn

a state budget allocation that the plaintiffs found personally objectionable. This action for allegedly prospective injunctive relief against state officials actually presents a claim against the state itself and is barred by the Eleventh Amendment.

## CONCLUSION

The State of Connecticut is entitled to sovereign immunity and therefore is dismissed as a party to this action. The claims against Governor Rowland and Commissioner Kirk are barred by the doctrine of legislative immunity and are dismissed. The claims for prospective injunctive relief are not within the scope of the Ex Parte Young exception to sovereign immunity and are therefore barred by the Eleventh Amendment. Accordingly, the motion to dismiss **[doc. #54]** is **GRANTED**. All counts of the complaint are dismissed. Judgment shall enter in favor of the defendants. The Clerk of the Court shall close the case.

**IT IS SO ORDERED** at Hartford, Connecticut, this ___17th___ day of February, 2005

_____/s/DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**